FILED
JUN 2 8 2005
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MYRON ANTHONY TUCKER,

    Plaintiff,

v.

DANNY D. JAIMET, Warden of the
Sheridan Correctional Center;
HEALTH PROFESSIONALS, LTD.;
DR. REETIKA KUMAR; and CERTAIN
CURRENTLY UNIDENTIFIED
EMPLOYEES OF THE ILLINOIS
DEPARTMENT OF CORRECTIONS,

    Defendants.

Case No. 02 C 1821

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Myron Tucker filed a single count complaint against Defendants Danny D. Jaimet, Warden of the Sheridan Correctional Center; Health Professionals, Ltd. (hereinafter, "HPL"); Dr. Reetika Kumar; and other unidentified employees of the Illinois Department of Corrections (the "IDOC") pursuant to 42 U.S.C. § 1983. Presently before the Court is Dr. Kumar's and HPL's Consolidated Motion for Summary Judgment. For the following reasons, the motion is **granted** in its entirety.

### I. BACKGROUND

Plaintiff is incarcerated with the IDOC for an armed robbery conviction. Sometime in late June or early July 2001, he moved to Sheridan Correctional Center ("Sheridan") from Big Muddy River Correctional Center ("Big Muddy"). During Plaintiff's

incarceration, presumably while he was at Big Muddy, he developed a continuing seizure disorder. To treat Plaintiff's condition at Big Muddy, he was prescribed Dilantin, an antiepileptic medication, and assigned a low bunk. When he was transferred to Sheridan, his medical records did not accompany him.

During Plaintiff's incarceration period at Sheridan, HPL provided contract medical services to the facility. Dr. Kumar, a general physician, worked for HPL and treated Sheridan inmates. Shortly after Plaintiff arrived at Sheridan, on July 12, 2001, he was in his cell and suffered a seizure and fell from his bunk. He was moved to the infirmary and treated by Dr. Kumar. Dr. Kumar kept Plaintiff at the infirmary under observation. On July 13, 2001, when he regained full consciousness, he informed her of his medical history of seizures and that he had not been receiving his Dilantin medication since arriving at Sheridan. Dr. Kumar's evaluations confirmed Plaintiff's seizure disorder and she restarted him on Dilantin. Plaintiff left the infirmary that same day and returned to his cell. Dr. Kumar's medical progress notes in connection with Plaintiff's seizure episode recommended that Plaintiff's medical records be ordered from Big Muddy. The evidence indicates that Dr. Kumar's request was standard practice, but that the medical records were never transferred from Big Muddy.

In the early morning hours of July 19, 2001, Plaintiff called a Sheridan nurse to his cell after feeling as though he was going

to suffer a seizure. Documentation indicates that Plaintiff's speech was slurred, gait unsteady, and blood pressure elevated. The Sheridan staff moved him to the infirmary for evaluation by Dr. Kumar. Dr. Kumar's medical progress notes reflect that at the time of her evaluation, she assessed that Plaintiff possibly was suffering from Dilantin toxicity. She then proceeded with a course of treatment designed to rule out Dilantin toxicity and again requested Plaintiff's records from Big Muddy. Plaintiff's blood was drawn and sent for analysis while he remained under observation in the infirmary. He spent over twenty-four hours in the infirmary and medical progress notes indicate that Dr. Kumar directly evaluated him three times and the nursing staff attended to him over twenty times. During this period, Plaintiff complained of a headache, left-sided weakness, and he suffered from incontinence.

On the morning of July 20, Plaintiff's blood test came back from the lab showing that his body contained normal levels of Dilantin. Immediately after receiving the results, Dr. Kumar requested and received approval from HPL's Corporate Medical Director for Plaintiff's transfer to the University of Illinois Hospital to conduct further testing. He was transferred to the hospital that same day. At the hospital, Plaintiff's CT scan revealed that he had a hemorrhagic stroke sometime around July 19, 2001. Thereafter, on July 23, Plaintiff had brain surgery to stop the hemorrhage from expanding.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 624 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

## III. <u>DISCUSSION</u>

Plaintiff's singular claim is that Dr. Kumar and HPL deprived him of his Eighth Amendment constitutional right pursuant to 42 U.S.C. § 1983 by acting with deliberate indifference toward his serious medical condition. Dr. Kumar and HPL move for summary judgment on the grounds that the medical treatment provided to Plaintiff was constitutionally sufficient.

### A. HPL's Liability

Although not explicitly claimed, Plaintiff's only basis for HPL's liability rests with vicarious liability because HPL employed Dr. Kumar. Seventh Circuit precedent clearly states that under § 1983, a private corporation is not vicariously liable for the deprivation of others' civil rights by its employees. *Iskander v.*

*Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). To fit within the narrow exception to this broad rule, Plaintiff would have to show that HPL had an express policy or authorized procedures that were constitutionally violative and proximately caused the deprivation of his rights. *Id.* Plaintiff has not presented any claim or other evidence with respect to the exception. Accordingly, summary judgment is granted in favor of Defendant on HPL's liability.

### B. Dr. Kumar's Liability

The Eighth Amendment protects prison inmates from deliberate indifference to their serious medical needs. The Seventh Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Prison officials or doctors may manifest indifference in their course of treatment or by denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The determination of deliberate indifference turns on the defendant's subjective state of mind. In order to be held liable, the prison official or doctor must knowingly disregard an excessive risk to the inmate's health. *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996). Thus, in addition to exhibiting a serious medical need, a plaintiff must also show that this need was deliberately ignored

and left untreated. *Gutierrez*, 111 F.3d at 1374. If the behavior is only negligent or even grossly negligent, then it is not constitutionally significant. *See Farmer v. Brennan*, 511 U.S. 825 (1974). Here, Defendants do not dispute Plaintiff's serious medical need, but they contend that Plaintiff fails to bring forth any evidence that the need was knowingly ignored.

Dr. Kumar asserts that in all of her interactions with Plaintiff, occurring on July 12 through 13 and July 19 through 20, her course of treatment of Plaintiff was constitutionally sufficient. In their first meeting, she responded to Plaintiff's post-seizure complaints by restarting him on Dilantin and requesting that his medical records be obtained from Big Muddy. Additionally, Dr. Kumar argues that her approach to Plaintiff's treatment on July 19 and 20 was reasonable, and while ultimately her diagnosis was incorrect, a medical misdiagnosis does not provide the basis for a deliberate indifference claim. Dr. Kumar asserts that Plaintiff's symptoms were consistent with both Dilantin toxicity and stroke, and her misdiagnosis did not alter or harm Plaintiff's future treatment by the hospital. Finally, Dr. Kumar notes that Plaintiff's pain and suffering -- his headache and incontinence -- were treated to the extent possible to ensure that diagnostic symptoms were not masked.

Contrary to Plaintiff's arguments, his post-seizure care on July 12 was constitutionally sufficient. Dr. Kumar attended to

Plaintiff's seizure and prescribed appropriate medication. She requested his medical records, contrary to Plaintiff's statements, and Plaintiff did not inform her or any other medical staff of his lower bunk assignment at Big Muddy. (*See* Pl. Dep. At 51-52). Even so, both the medical records and the lower bunk issues at most are negligence issues and do not inform the constitutional deliberate indifference analysis. *See Estelle*, 429 U.S. at 105 (holding that not every complaint by a prisoner concerning medical care is actionable under the Eighth Amendment); *see also Gutierrez*, 111 F.3d at 1372.

The pivotal issue on July 19 and 20 is whether Dr. Kumar's misdiagnosis and subsequent treatment serve as a factual basis for relief. Under Supreme Court and Seventh Circuit § 1983 law, medical malpractice and negligence in treatment or diagnosing (misdiagnosis) are not constitutionally cognizable claims. *See, e.g., Estelle*, 429 U.S. at 106; *Smith v. Ashgar*, 2004 U.S. App. LEXIS 22568 (7th Cir. 2004); *Cardwell v. Ton*, 1997 U.S. App. LEXIS 4103, *3 (7th Cir. 1997)(holding that as long as "[the defendant physician] attempted to diagnose and treat [plaintiff's] condition, he was not deliberately indifferent to a serious medical need").

The record shows that Dr. Kumar examined Plaintiff, kept him under constant observation in the infirmary, and embarked on a treatment path consistent with Dilantin toxicity that even Plaintiff's expert noted was reasonable. (*See* Frame Dep. at 39).

Further, Plaintiff's expert admits that some of the symptoms of Dilantin toxicity and a stroke overlap. (*See id.* at 46). It is not disputed that Plaintiff had a serious medical need. Nor is it disputed that Plaintiff received treatment. The remaining facts concerning headache and incontinence are not material or litigatable claims. There is evidence that Sheridan medical staff attended to Plaintiff's pain and discomfort, and treated it to the extent possible without harming the ability to further diagnose him. (*See* Frame Dep. at 31-32). Consequently, Plaintiff has not alleged a cognizable claim against Dr. Kumar and summary judgment is granted for Dr. Kumar.

## IV. CONCLUSION

For the reasons stated herein, HPL's and Dr. Kumar's Consolidated Motion for Summary Judgment is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: June 28, 2005